Good afternoon. We have one matter on for this afternoon, and it's number 13-9004. Chester v. Commissioner of PA Dept of Corrections and the Superintendent of Pittsburgh SCI, Messrs. Epstein and Harris. May it please the Court, I'm Jules Epstein and with Daniel Silverman represent petitioner below, appellant here, Frank Chester. We respectfully request the right to reserve three minutes for rebuttal if needed. Thank you. At the trial in what was then a capital case, Frank Chester stood in court, next to him stood his lawyer, slightly across at the other table stood the prosecutor. But the prosecutor was also the prosecutor of Mr. Chester's lawyer. Are you asserting that there's a per se rule or should be a per se rule in this circuit? That if any person in the government, in the Commonwealth government, knows of even a potential conflict, that that means there's got to be some automatic inquiry that the Commonwealth has a responsibility at that point? We are not avowing looking backwards that we are entitled to relief because no one said time out. We will argue, Judge Jordan, that that failure to speak, both then and a decade later, when on PCRA Mr. Chester's new lawyer tried to learn about Chester's disciplinary, I'm sorry, the trial lawyer's disciplinary records, and the prosecutor, again, not only did not disclose it, but by illusion made it appear that it wasn't there. And I will document that, that that goes to timeliness and diligence. Okay. Let's stick with timeliness and diligence for just a second. You've pointed to Mr. Orchard and his efforts on behalf of the client. And you make the assertion on page five of your reply brief, and it surfaces in your opening brief too in somewhat different words, that, quote, in almost all instances criminal record checks of suspended lawyers who drink heavily will not turn up anything, unquote. Sure. Which seems to me like a remarkable assertion devoid of any factual support at all. And given that in the record there is a set of bar bills, which is, and I'm not a drinker, so I don't have a good sense of this, but people I know who have been buying tell me that this is a rather staggering amount of alcohol that Mr. Edwards managed to consume or at least to buy. How can you say that Mr. Orchard, knowing about this drinking problem, wasn't on some kind of inquiry notice to see whether, hey, a guy who's drinking himself sick every night may be getting in his car and has a problem with the DUI? There are two reasons, maybe two and a half, if you'll forgive me. Reason number one is I went to check the data. And between 1975 and 2013, 8,669 lawyers were disciplined in Pennsylvania. So I would respectfully suggest the numbers are with us, that with that volume, to say that when there's more, Judge Jordan, but that's part one of your argument. Because right now you're arguing a non sequitur, Mr. Epstein, which is because in many instances there won't be a DUI, that in no instance should a lawyer be on notice to check. Then let me get to this case in particular, Judge Jordan, because here's what happens in 1997 at the PCRA hearing. And we have to apologize for not highlighting this in our brief. But it's found in the supplemental appendix at page 18. It is found in the brief for appellant at, I believe, 33 and 34. As you're referencing Mr. Orchard, the lawyer now for Chester makes a motion saying, I'd like an order to get the disciplinary board records disclosed. Right, because he thinks that perhaps there's some evidence that he's been disciplined because of alcohol. Right. So it's not a bridge too far to think that in addition to having been disciplined professionally, he may have also gotten in trouble criminally. And there are two parts to the answer, Judge Hardiman, as to why we respectfully disagree. What happens at that hearing is Alan Rubinstein, who prosecuted Chester, who supervised because he was the DA of the prosecution of Mr. Edwards, and who's now handling the PCRA, interposes himself as Mr. Orchard is asking for this discovery to be given and says, actually questions counsel at the bar of the court, do you have any definitive information that that problem may have occurred at the time he was representing Frank Chester? And our position is simple, that that's a misleading, that's a misdirection. By that problem, the problem that's, you are assuming that the problem that now Judge Rubinstein was talking about was the drinking problem and not disciplinary problem, right? I mean, isn't it a fair reading of that to say that the question being put is, why are you trying to unseal a disciplinary record? Do you have any basis for believing that disciplinary problems occurred at that time? And forgive me, I can pull out the pages later. Trust me, the entire exchange is in the appendix. It's clear contextually it's the alcohol. And our position, because obviously this goes to whether we're talking about under 2244, our diligence in finding it or under equitable tolling. Orchard is a lawyer, not from Bucks County. Let me, I'm kind of lost. Let me just see if we can grab this. If you look at the Gambino case, is it really enough to show that there's some possible alternative defense strategy or tactic that Mr. Edwards might have used, without also the need to show that the alternative tactic or strategy was inherently in conflict with what Edwards ultimately did in connection with the DUI charge? I don't see the inherent conflict. The inherent conflict? Okay. And now we've jumped, of course, from timeliness to merits. I understand. Okay. And our answer is as follows. And this goes to the issue where the lower court, Judge Jones, ultimately, although he let us make inquiry into this, said, I refuse to consider it. This DUI did not occur in a vacuum. It occurred in what we frankly describe as a perfect storm of a lawyer's life in absolute collapse. Number two, we cite, and if you'll forgive me, but I want to turn to it for a moment to give you a precise quote. It's our position that Mr. Edwards made under oath admissions before Judge Jones that answer that question and draw the link. In the appendix at page 176, and that part of the appendix is where we have the entire transcript of Edwards' testimony, he agreed that, quote, my wife's condition, my pending criminal charges, and other financial difficulties I was having right then all interfered with my abilities in the courtroom. This is in what, an affidavit? This was in his affidavit, but he adopted it in the court and said under oath, quote, that was accurate. So we're not going into the hearsay issue or anything. He accepted those as his correct statement in court. But what did he do during the trial? I'm sorry, can I interrupt while I have to say, what's the precise page that you've got that on? According to my notes, which I hope are accurate, and I'll double check it or my colleague will, it's at A176. So let me see if I get the facts straight. March 22 of 88, Chester retained Edwards. Correct. March 29, a week later, Edwards is arrested for DUI. Either six or seven days, yes, Judge Ambrose. And then he was found guilty around May 20th. And then somewhere in June, July, he, before the same judge, went before the same judge with regard to the DUI matter, and he was put into this special program. Pre-trial probation. It's a diversionary program. Your point is that the failure to have this disclosed was a conflict of interest or what? That the conflict of interest is not the failure to disclose. It's that your lawyer doesn't have 100% loyalty to you. He has some concern about himself. Because he's trying to curry favor so that he doesn't get punished in his criminal case. Either curry favor or at a slightly lower level, which is that that becomes a major distractor which inhibits or prevents his ability to give his all to this case. All right. But the problem with that, it would seem, is that Attorney Orchard didn't develop any kind of a record on PCRA in front of Judge Biester on that issue. So why isn't this a layered ineffective claim? Wasn't Orchard ineffective for not developing that? Unfortunately, we never plotted under Martinez. So I have to say we're stuck in the procedural posture that we are. And the Supreme Court of Pennsylvania affirms the PCRA decision by saying there's nothing in the record here to indicate an actual conflict. Right. Because the record was never developed on that. You have an obvious potential conflict of interest that you cited in spades. But show us where the record shows an actual conflict of interest. Well, forgive me. I think we're asking two different things. Let's start with it. Let's concede there's a potential conflict. But potential conflicts aren't necessarily conflicts. Potential conflicts discovered after a trial is over have to be proved or shown that they were active or activated by showing an adverse effect. Right. So it's because we're looking retrospectively. It's important to show at trial that Edwards took actions that could be criticized as not wishing to be on the bad side of Judge Biester. Yeah, at some point you have to show the potential conflict was an actual conflict. You don't get to go straight to adverse effect. You've got to pass the test set out in Gambino for demonstrating something is an actual conflict. An actual conflict, Judge Jordan, discovered post hoc, right? Whenever it's discovered, right? No, because if it were discovered pre-trial, and so let's assume this was appointed counsel, clearly Mr. Chester would have the right to say, I don't want him as my lawyer. And that would be an actual conflict. So it's no different in terms of but because we only know about it afterwards. Well, let's stop for a moment and accept that we only know about this afterwards. Are you disagreeing that the law in this circuit is as set forth in Gambino adopting the First Circuit's FAA test that first you've got to show a plausible alternative. Second, you have to show that the alternative was not taken because it was inherently conflicting with or otherwise not undertaken due to conflict. That's the test for an actual conflict. Yes. And you accept that that's right, right? Absolutely. And that's something you have. That's step one, and after step one comes adverse effect, right? You've got to show both the actual conflict and the adverse effect, right? I've always understood adverse effect as the plausible alternative that he didn't pursue because of this. There's nothing beyond that. There's not an additional requirement to my understanding, Judge Jordan. Okay. Okay. And if that's right. And that may be right. I'm happy to be straight down on that. But I understood our case law to say you've got to show both the actual conflict and an adverse effect from that conflict. Now, maybe our law is just messed up, but isn't it spoken of in two steps? We have to show something, and Judge Amber used the words which I would embrace, a potential conflict. So, for example. No, no. I said if you show up. We can see that there's a potential conflict, but ultimately you have to show that there's an actual conflict and that if there's ineffective assistance of counsel with regard to that, you have to, in other words, the counsel performed below a level he should have performed, that there was actual prejudice to Mr. Chester's case. Actually, we don't have to show prejudice. That's the whole thing about conflict law. We only have to show adverse effect, not prejudice. Because I see my time is up. Go ahead. Okay. Here's what I think the law is and what we are able to show, that with the existence of the DUI, which to any lawyer is serious. I agree there are many charges that are more serious, but for any lawyer, I suspect anyone in this room, none of us wants to get arrested for anything. Not a good thing for our careers. At a time when my wife is dying, I'm being sued, I have liens against me from the IRS, my life is falling apart, I have PTSD, and I'm self-medicating. I thought you had abandoned your chronic claim. We're not arguing a chronic claim. It starts to sound to me like you're saying, I couldn't function. If you're saying he can't function, it sounds like you're making a denial of counsel claim. We are saying that all of those things go to... How does that amount to a conflict of interest? How do you morph, my life is a mess, into a conflict of interest? Because he cannot meet the standard that this court simply articulated in the ZEP case of being able to give undivided loyalty to his client. Everything is a conflict, right? What's not a conflict of interest? If your assertion is, my life is a mess, therefore there's a conflict. Anytime somebody's got a problem in their life, or a multiplicity of problems in their life, they're suddenly in a conflict of interest zone, that seems like... No, I think I'm drawing a very fine line, which is when it reaches... I agree with you that there's a low end where it doesn't count. Conversely, there has to be a high end where things have spiraled so out of control, particularly in a capital case where lawyers have the responsibility of somebody's life. Yeah, and what we call that level of problem is a chronic violation. That you've got so many problems that you're effectively denying the person counsel. Or, if you can't make that claim, you don't have a conflict of interest claim at all, and you're talking about ineffective assistance to counsel under Strickland. But you can't turn a guy's personal problems into a conflict of interest without showing there's actually a conflict of interest. The meaning is in the words. Where's the conflict of interest between the wife's multiple sclerosis and Mr. Chester's claim? Or a criminal case. None. There's none. And we suggest to the contrary that once he gets the DUI, when he's already in this cauldron, everything gets magnified. And we come back to, my life's falling apart, if you will, this is the proverbial straw on the camel's back. And we have admissions in the record from Mr. Edwards. That I missed this, that I missed that. They're cited on our brief that I should have thought about using Mr. Chester's cream and falsie. I should have done this. But you've got to tie those up to his potential criminal jeopardy to get anywhere on the conflict claim. And that's what we do with the quote at page 176, or such is our contention. Where he admits that he told Mr. Silverman, he made that comment to Mr. Silverman. And then on the next page, when he's asked, I said, was it accurate? And he said, yes. Yeah, that he had problems in his life. I'm still having some trouble seeing how you've linked that to conflict. But let me ask a question, just a purely legal question, if my colleagues will indulge me here. Because we're going to be saying something about this case right after we're finished with the argument from both sides. This is the language from Gambino. Appellant need only establish there was multiple representations, et cetera, et cetera. That there was an actual conflict of interest which adversely affected Eversoft's performance. Actual conflict of interest which adversely affected counsel's performance. Now, that sounds like there's two steps. You've said, no, no, there's not two steps. So I'm interested to know how you think this works so that I can ask the other side the same thing. And we can make sure if there's confusion in our law, we can try to straighten it out. And if there's not, that we're saying the right thing. And I hope I'm saying this accurately. Because this is discovered afterwards and it's a retrospective analysis. We have to say, A, is there a condition which for some of the time, whether it's multiple representation or an arrest, that has the potential to create a divided loyalty. Because it's a retrospective examination. And I'm going to shift here one second to use the cases on multiple representation. Because I think that answers your step-by-step analysis, Judge Jordan. What the courts have said, okay, multiple representation might result in divided loyalties. But since we're looking at it retrospectively, in this case, oh, they had the same defense, no harm, no foul. Oh, in this case, they had antagonistic defenses, harm and foul. To me, that's where the adverse impact goes to prove that it was an actual, real conflict. Before you sit down, I've got to ask you one fact question. There was a purported affidavit signed by Mr. Edwards that he later on says he didn't sign. Did anybody ever figure out who did what? Did he sign it? Did anybody consult a handwriting expert? What happened here? The hearing ended with that. So we have never gone back to say, Judge Jones, could we send this to a handwriting expert? I acknowledge that didn't happen. In other words, I will say bluntly, we were a little surprised at the hearing that he suddenly said, I didn't sign it. We had two witnesses who saw him sign it. I sent him letters, and he acknowledged receiving my letters. I think if you read the hearing carefully and see Judge Jones's questions to him, you will see that Judge Jones on that one seemed a little, are you sure you didn't sign it? But we're stuck at the moment with his record answer. May I ask the court's permission for one thing? Sure. I found an error of law, I hope I can say that right, which I notified my opponent of earlier today in Judge Jones's opinion. And I would just like to be able to note that for the record so that you're aware of it. In Judge Jones's opinion, if you'll forgive me just so I can find that page. What page are you? Page 10. Okay. Judge Jones cites Gambino, and then has some language that he puts in quote marks as if it is from Gambino. And his language is the lapses, in other words, the errors of a lawyer. To succeed in this claim? Yes. Must be so egregious as to violate objective standards for attorney performance. So this morning I went and re-read Gambino. It's not in there. It turns out when you do a Lexis search on that language, it comes from a subsequent case in this court, and I apologize for only having caught that today. That case is called Hess at 135F3905, but Judge Jones left out the negative. In other words, in his opinion it says the lapses must be so egregious in Hess. So he leaves out a must not be so egregious? That language in Hess is he need not show that the lapse in representation was so egregious. And so thank you for permitting me to let you know that. I apologize we did not catch it earlier. Very good. Thank you. Mr. Harris. May it please the court, Steve Harris from the Bucks County District Attorney's Office. The court asked us to initially address whether or not there was waiver, I'm sorry, whether or not the statute of limitations was violated in this case because the habeas corpus petition was not filed within one year after the final decision of the Pennsylvania Supreme Court. The Pennsylvania Supreme Court decided, denied a petition for re-argument on the PCRA on, I got it here somewhere, well maybe we could do it in August of 1999. So what had happened was Mr. Chester filed a pro se habeas but it didn't raise any issues. Right. So the, I'm sorry. And everybody at this point seems to recognize that that's the case and that our COA order actually was an error in indicating that it might have been in that. But the petitioner makes a pretty good point or raises a good question when they say, look, this is a waivable defense and 13 years go by, these guys never cite the EDFA statute of limitations. They may be talking about Pennsylvania law, they may talk about procedural default, they may talk about a whole bunch of stuff but they never once utter the words, hey EDFA one year statute of limitations. And that amounts to waiver. What's wrong with that argument? In our answer we specifically said that the filing was untimely. I mean that's the word that we used. Now you've made the argument but you haven't provided the proper legal grounds for the argument, is that what you're saying? No. What I am saying is that in our answer to the habeas corpus petition, we alleged that the filing of the petition was untimely. In state court? No, in federal court. Our answer to the federal habeas corpus petition is that it's untimely. Now I would concede, Judge Hardiman, that we promptly left that argument and went to procedural default. Judge Jones found that under the relaxed waiver standard there wasn't a procedural default. So you are correct and I don't want to be playing games with the court. We, after initially saying and having said for years that this was untimely, we switched our focus to procedural default and we did not raise the issue again. How about a cite, Mr. Harris? That would be a help. What are you relying on when you say, hey, in our answer we said it? We said untimely. Actually, you may want to just do both state court and district court. We said it in state court over and over and over again. I'm trying to find the reference to where we said it in our answer that it was untimely. I thought what you argued in the district court that his claim was procedurally defaulted because the state court rejected it as untimely. I'll rely on Ms. Henry or Ms. Graziano to find that rather than me fumbling through it because you can never find these things. But in the answer, the heading of that particular section is that it was untimely. We then morphed into procedural default. So I'll leave that. Before you leave it, I'm trying to get a handle on whether the district court ever had an opportunity to pass on that argument. The district court did not address it. The district court simply addressed the issue of procedural default. Was that issue joined? No, I don't think that I can make that argument. I think that I can make the arguments that I'm making, which is that we said it was untimely. Our focus in argument then switched to procedural default. So we did not go back to Judge Jones after he found that there was no procedural default under the last waiver and say, Oh, and by the way, it's barred by the statute of limitations. We didn't say that, and I'm going to be blunt with the court in saying that. So Judge Jones did not consider that. So we should consider it forfeited then? I mean, it's not really waived because waiver is the intentional relinquishment of a known right, and you didn't do that. No, I don't think we did. But it would seem that you forfeited it because you didn't press that issue, right? You have a claim. Being an advocate for the Commonwealth, I think that once having raised it and not waived it, it was before the court. But I understand your point. Okay, so getting to the merits then, what's the error in Mr. Epstein's way when he says, The error in Mr. Epstein's way is, A, you have to prove an actual conflict, and, B, you have to prove that that conflict had an adverse effect. It is a two-step procedure. The decision in Gambino followed the Supreme Court's initial opinion, which was in Sullivan and then in Mickens. And it's a quote held where there is, An actual conflict of interest, meaning a conflict that affected counsel's performance as opposed to a mere theoretical division of loyalties. How do we address the point that Mr. Epstein has made here in argument today, that if the definition of actual conflict is there was some alternative, and that plausible alternative wasn't taken because of conflicting interests, then by definition at that second step, you have stated an adverse effect. There's nothing further to do because that is an adverse effect. But you've got to tie the conflict to the failure to take a certain action. For example, one of the arguments here is that he didn't cross-examine Laird. Well, he had a good reason not to cross-examine Laird. The district attorney had just vigorously cross-examined Laird, and Laird, of course, was putting it on Chester. He didn't want to have Chester simply go out and repeat again and again, no, it was your client. And that's why a number of these cases say if you failed. Hold on a second. And I understand, Mr. Harris, that you want to get to those points, and I'm happy to hear them. But I'm still trying to get my understanding from both of you as to your positions on the specific test we're supposed to apply. And his statement to us is it's not two steps. It's a test that says if you've got plausible alternatives and you don't take them because of your conflict, that not taking, as I understand it, the failure to take them is the adverse effect. Now, he can speak for himself on rebuttal, but that's what I understand the argument he just made to us. Now, by definition, if you didn't do something because of your conflict, that does link it to the plausible alternative, right? Yes. Okay. So do you agree or disagree with his assertion that, however we may have framed it in the past, the adverse effect is baked in to the definition of the conflict? If you fail to do something because of the conflict, that is the adverse effect? Or is something else going on here that we should be paying attention to, and there really is a separate, distinct adverse effect test? You have to find, initially, that there was an actual conflict of interest. And that's what Judge Jones specifically found, that there was not. He said, at the end of the day, nothing Petitioner has provided to this Court establishes that a conflict of interest existed, which deprived the Petitioner of a Sixth Amendment right to counsel. The existence of potentially different trial strategies that might have been employed by counsel is not enough. Instead, Petitioner must demonstrate that the pending DUI charge against Edwards caused him to adversely change his trial strategy and or fail to employ certain methods in his trial strategy. Petitioner has failed to do so. And to some degree, that comes from the hearing that we had before Judge Jones. Judge Jones gave Mr. Chester and his attorneys every possible opportunity to demonstrate that there was some relationship between this theoretical conflict and Mr. Edwards' performance. In the hearing before Judge Jones, and this is on page 217A of the record, I asked Mr. Edwards, did you make any decisions in this trial because you were afraid, if you made them, that Allen Rubenstein and your district attorney's office would treat you differently than any other defendant in Bucks County? Answer, quite to the contrary. I had no fear of Allen Rubenstein or anything that he could do. My life experience dictates you only fear those things that you know are possible. I had no reason to believe that Allen would treat me any differently. I thought it was a sure thing I would get ARD. Is there a fact-finding in Judge Jones' decision? The petitioner says there's no fact-finding in here, but your briefing seems to indicate, and in fact you say they take it to task in the reply brief because they disagree with it pretty strongly, but your briefing seems to indicate that you think there's a fact-finding on credibility with respect to Edwards. What's your position? Let me repeat Judge Jones' own words. The court had the opportunity to assess Mr. Edwards' demeanor and his testimony firsthand. At the end of the day, nothing petitioner has provided this court establishes that a conflict of interest existed. So on the specific question of who's lying, because somebody's lying about this affidavit, right? Whether he changed his position or he didn't change it, this is one of those binary things. It's an on-off switch. Somebody's not being truthful. Are you saying that in that, those words you've just quoted implicitly is a statement by Judge Jones that as a matter of fact he found Edwards' trial testimony, his hearing testimony, credible? Taken everything together, yes. That's what I'm saying. And I'm saying furthermore that because you both asked about this, you know, I don't think frankly that Mr. Epstein believes that the pending DUI arrest established a conflict of interest either. That's why they had to bring in all this other stuff about his personal life and his wife's condition and he was being sued and et cetera, et cetera, et cetera. Well, I mean, it's what any good counsel would do. Oh, yeah. I don't argue that. But the point is that their entire presentation is that it took his whole, if you will, perfect storm to develop the conflict, whereas Judge Jones said exactly the same thing I think that you said, Judge Ambrose, which was I don't get the nexus here between his personal problems and his representation. At trial. At trial. And Mr. Edwards is saying I didn't do anything at trial because I was concerned about not being put on ARD. It was a sure thing. And Judge Jones was saying, look, I took the whole thing, the good, the bad, and the ugly. I listened to it. I had the chance to listen to the testimony and I concluded that based on that testimony he hasn't presented it, the petitioner hasn't presented enough. Is the hearsay ruling meaningful? The fact that he said that's hearsay, I'm not taking account of it. Is that a problem that we have to deal with? I don't think so. The rule is Federal Rule of Evidence 807, and it says there are four things that you have to have before you admit to hearsay statement, and one of them is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts. Now, here we've got the man testifying in front of him. That has to be the most probative evidence of what this person said. Sure, but the affidavit can be used to impeach him in space. Certainly can. Certainly can. But that's different than admitting that as evidence as they wanted to do, and Judge Jones had the opportunity to hear them cross-examine Mr. Edwards, to see Mr. Edwards' demeanor, to hear what he had to say, both the things that they didn't like him to say and the things that they did like him to say, and at the end of the day he said there's no conflict. And so can I ask a practical question? Yes. A practical question here. The first degree murder conviction was vacated on the basis of the same ruling that occurred with Mr. Laird, right? That's correct. Okay. So if habeas relief, well, I guess the question I should ask is this. If habeas relief were granted here, what would it mean as a practical matter for the Commonwealth? We'd have to go back and retry him for the whole thing. What happened in Laird was that while the first degree murder conviction was set aside, the second degree was not. So at this point, if this is not set aside, he's convicted of second degree murder. If it's set aside, we've got to go back and retry him in a whole new trial. On everything. That's correct. Is the intention of the Commonwealth to retry Mr. Chester? Is that something that you've taken a position on? If this court reversed him. Regardless of what happens with this habeas petition. Because there's a vacated first degree murder charge out there, and my understanding is that things have been sort of hanging fire while we deal with this other set of issues. Let me answer that question. It would be our intention to retry him. However, before we retry anybody, we'd sit down with the family. We'd sit down with the police officers, et cetera. We'd discuss it with them, and we'd come to a decision. But I have to say to you that our present intention would be to retry him. Has a date been set for that? Has any kind of date been set, or are you just waiting? We're just waiting for this decision. Yes. My understanding would be you bring in, and I think we have 180 days or something like that. That's what would happen. Okay. Thank you very much. If you will permit me, and I'll do this as succinctly as I can. Five points. Judge Hartman first. The citation or point in the record in terms of the issue of what they didn't plead about timeliness is document 44. It's their 2006 response or answer to the amended habeas petition, and it's at pages 22 to 24. The word federal is never mentioned. It's all about state procedural default. Point number two. We do say that an arrest alone equals a conflict, or the potential conflict, whatever terms we're using. And so has this court, because in this court's case of Zepp, the lawyer hadn't even been charged but might have faced charges. Zepp's a case where the lawyer's being potentially liable for the very crime that's subject to the prosecution. You can't get a lot of mileage out of saying this case is like Zepp, can you, really, Mr. Epstein? No, but I can by also saying that we cite a case from the Eastern District of Michigan called Ruggiero, where Ruggiero's lawyer was under investigation and ultimately charged on things unrelated to the specific charges of Ruggiero. So that's our answer there. Judge Jones said expressly he had to take into account, he felt it incumbent upon him to take into account the fact that this was a DUI offense for which there was a diversionary program available, a relatively minor offense, and therefore not like other cases where serious criminal issues were pending. Was he wrong as a matter of law to understand that that was something he could take into account? The character of the offense is a misdemeanor with a diversionary program as impactful on the question of conflict and true adverse effect? It would be absurd for me to say otherwise. Of course, the magnitude of this, but it doesn't mean it's zero. And I want to add two things about that. You have in the record the deposition we did of Mr. Rubenstein, now Judge Rubenstein, that when he came on board he was treating these seriously and that he viewed these seriously and he let the word go out into the community. There was no ARD arrangement at the date of the trial. That was hoped for, if I may, because I see time is running real quickly, about the whole issue of was there a credibility determination? Our answer is no, or certainly not the one to resolve this, because the paragraphs that my colleague Reggie showed, he said, I saw his demeanor and I make this legal conclusion. How could there not be a credibility determination? The second part of our answer is this. That was done by Judge Jones through the wrong prism. In other words, he's relying on that quote from Gambino that's not in Gambino. He set himself up in saying, I'm finding credibility, if I am at all, or at least I'm considering his demeanor under the wrong standard. And that's also reflected in Judge Jones' questions. He asked this man, did you take a dive or did you throw the case or did you tank? Well, that's not the legal test. If the test is only there's a conflict if you're deliberately throwing the client under the bus, we lose. But the test isn't there. The test is could you give him the undivided loyalty and quality representation he deserved. What did Edwards admit he would have done differently but for the pending DUI charge? I don't. And they're quoted in our brief. To me that's the key question. It really is. I'm sorry? To me that's the key question in all of this. All right. And we quote in our brief, he acknowledged that he was distracted due to this. Distracted is one thing. But because of that he may have missed, and he said it, I may have missed using, for example, what we call in Pennsylvania the cream and falsie, the crimes of falsehood or deception that were admissible to impeach Laird extrinsically, even if he didn't cross-examine Laird. Because of the pending DUI conviction? Or because of his personal problems? Because he took his eyes off of what he was supposed to be doing. That sounds a little bit different. Because of the distraction that he linked back to the quote that I read to you earlier. That's his personal problems, right? Including the DUI, which he included in that group, Judge Jordan. I mean, Judge Jordan just made a comment. It really sounds like just a generic ineffectiveness argument that could be made. What would he have done? He might have done some things differently. Everybody at a trial, whether it be civil or criminal, might have done something differently if they had a redo. But not if I say, frankly, you know what? I'm going through post-traumatic stress disorder. I'm self-medicating. Now I've got this criminal charge. You know what? Looking back 15 or 20 years later, I might have missed it because of that. Well, that's a pretty selective quote because didn't he just aggressively say, I gave my all for this guy and there's nothing I would have done differently? Sure. And it depends on which question you ask him. So when you ask him the big picture, Judge Jordan, you're right. Because he's up there saying, I didn't throw my client under the bus. But when you get concrete and discreet. He didn't just say I didn't throw him under the bus. He said, I was aggressive for my client. That's his assertion. And I would say part of this is an objective test. And when we look at it, and when you look and forget the pages, I think they're pages 44 through 49 in our initial brief where we detail what we contend. Sorry, I'm not litigating it under ineffectiveness. I think we prevail there, too. There are remarkable errors beyond the ones we've talked about. Perhaps the most egregious, seating two jurors who were not appropriate in capital cases because they believed one was in giving the death penalty. So, again, we've laid it out in the brief and we've tried to quote extensively in the brief anywhere that he explicitly admitted. I will say this, and I apologize again for not having found that site earlier and realized that Judge Jones applied a completely erroneous standard. That may have infected, if you will, this whole, was there a credibility determination? What was going on here? So we have the judge looking it through this very narrow prism, which is completely contrary to Third Circuit law, and also said I'm only going to look at the DUI and not with these other things as what I would call, for lack of a better phrase, aggravators. But I've gone way over, and unless the Court has any questions, I must thank you, as I'm sure my colleague does, for the courtesy you've shown us all today. Thank you, and thanks to both counsel for well-presented arguments, and we'll take the matter under advisement. Thank you. I appreciate your being here.